**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANTONIO VALDES CRUZ**
**and JOHN BUTLER,**

              **Plaintiffs,**

**v.**                                              **Case No: 6:24-cv-744-GAP-DCI**

**FREEMAN'S CONSTRUCTION**
**& ENGINEERING GROUP, INC.,**
**GUILLERMO ANGEL ALONSO,**
**and THE PINEWOOD HOLDING**
**COMPANY, LLC,**

              **Defendants.**

___

# AMENDED REPORT AND RECOMMENDATION[1]

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**    **Plaintiffs' Motion for Entry of Final Default Judgment (Doc. 95)**
>
> **FILED:**      **June 13, 2025**
>
> ___
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    Procedural Background

Plaintiffs initiated this case alleging that Defendants violated the minimum and overtime wage provisions of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219.  Doc. 1. Defendants answered.  Docs. 9.  From the outset, Defendants failed to comply with the Court's

___

[1] The Report and Recommendation is amended solely to correct references to the surname of Plaintiff Antonio Valdes Cruz in the body of the Report.  The prior Report will be withdrawn to correct this typographical error.

orders and to properly litigate this case. *See, e.g.*, Doc. 30. Shortly after the Court entered the Case Management and Scheduling Order, Plaintiffs filed an Amended Complaint. Doc. 42. Defendants answered. Doc. 46. However, due to a litany of failures by Defendants and their counsel—ultimately detailed in the undersigned's report and recommendation (Doc. 81) and the Order adopting it—the Court struck Defendants' answer to the Amended Complaint and directed the Clerk to enter default against Defendants, all as sanctions for Defendants' conduct in this case and as permitted by Federal Rule of Civil Procedure 37(b). *See* Doc. 81 at 2 ("It is worth noting from the outset that Defendants have utterly failed to litigate this case."). Plaintiffs' instant Motion for Entry of Final Default Judgment followed. Doc. 95 (the Motion). As Defendants have done repeatedly in this case, they failed to respond to the Motion, which is now ripe for review.[2]

## II.    Plaintiffs' Allegations

Plaintiffs allege that they were employed by Defendants Freeman's Construction & Engineering Group, Inc. (Freeman's) and The Pinewood Holding Company, LLC (Pinewood). Doc. 1. Plaintiffs allege that Defendant Guillermo Angel Alonso (Alonso) was also their employer under the FLSA, owned Freeman's and Pinewood, exercised operational control over the business activities of Freeman's and Pinewood on a day-to-day basis, and exercised operational control over the employment of Plaintiffs. Further, Plaintiffs allege that Alonso, through Pinewood, controlled and directed the payment of the Plaintiffs' wages throughout the Plaintiffs' employments, including decision-making regarding the payment of overtime premiums and any additions to or deductions from Plaintiffs' wages. Plaintiffs allege that Defendants collectively, were joint employers with respect to the Plaintiffs, as they, together, exerted sufficient control over the

---

[2] At a July 30, 2025 hearing at which Defendants' counsel was present, counsel confirmed that Defendants had not responded to the Motion and that it was unopposed. Docs. 100, 101.

Plaintiffs' employment such that they shared or co-determined the matters governing the essential terms and conditions of the Plaintiffs' employment.

Plaintiffs allege that they worked for Defendants in Brevard County, Florida performing non-exempt, hourly paid repair and remodeling work. Plaintiffs allege that they consistently worked in excess of 40 hours each workweek throughout each of their respective employment periods with Defendants. Specifically, they worked between approximately 60 to 66 hours each workweek. Despite full knowledge of the hours Plaintiffs worked, Plaintiffs allege that Defendants failed to credit and pay Plaintiffs for all time worked, failed to pay minimum wage given the hours worked, and failed to pay Plaintiffs at a rate of at least time and-one half their regular rate of pay for their hours worked in excess of 40 each workweek.

Plaintiffs also allege that Defendants owned multiple units at the Palm Bay Club apartments and furnished Plaintiffs with lodging at those apartments. Defendants owned other units at the Palm Bay Club and, as a part of their regular duties, required Plaintiffs to perform repair, maintenance, remodeling, and other work for Defendants in relation to those other units. Plaintiffs allege that Defendants deducted from their regular pay a $500 per week "lodging credit" in relation to the units Defendants furnished to Plaintiffs. However, Plaintiffs allege that the cost incurred by Defendants to furnish those units to Plaintiffs was about $300 per week. As such, Plaintiffs allege that Defendants received a profit from the lodging credit deducted from Plaintiffs' wages. Further, Plaintiffs allege that Defendants failed to satisfy the FLSA's recordkeeping requirements for employers who take lodging credits and, as such, Defendants are ineligible to take such lodging credits. Because of that failure, Plaintiffs allege that they are entitled to the full amount of the deducted lodging credit.

Based on the foregoing, Plaintiffs claim that Defendants intentionally and willfully failed to compensate them at the applicable statutory minimum wage rate for hours worked per week and that they unlawfully worked overtime hours without receiving time and one-half compensation.

### III.    Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Afterwards, a court may enter a default judgment against the party.  Fed. R. Civ. P. 55(b).  Here, the Court struck Defendants' Answer and directed the Clerk to enter default against Defendants. Accordingly, the undersigned proceeds in the context of Rule 55(b), conducting the analysis necessary for entry of a default judgment upon the entry of a clerk's default.[3]  "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'"  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The Eleventh Circuit has interpreted "a sufficient basis" as "being akin to . . . surviv[ing] a motion to dismiss for failure to state a claim."  *Id*. (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In addition to stating a plausible claim for relief, the movant must ensure that the court has jurisdiction over the parties.  *Schwartz v. Fontana*, 2016 WL 4272213, at *2 (M.D. Fla. Aug. 15, 2016).  "All well-pleaded allegations of fact are

---

[3] While Rule 37(b)(2)(A)(vi) permits a court to, as a sanction, "render[] a default judgment against the disobedient party," Plaintiffs requested (Doc. 73 at 4)—and the Court here took—the lesser step of striking the Answer and directing entry of a clerk's default pursuant to Rule 37(b)(2)(A)(iii).  Defendants did not respond to the Motion seeking default judgment, nor did they seek to set aside the Clerk's default.  The Defendants' actions—or lack thereof—in relation to the instant Motion are consistent with their utter failure to litigate this case.

deemed admitted upon entry of default; however, before entering a default judgment, a court must confirm that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted." *See Nishimatsu*, 515 F.2d at 1206.

### IV.    Discussion

#### A.  Personal Jurisdiction

Given the fact that Defendants did not dispute personal jurisdiction when they initially appeared, the undersigned finds that there is personal jurisdiction over Defendants.  *See* Doc. 9. The Eleventh Circuit held that in this circumstance, a defendant is deemed to have "'waive[d] any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a [motion to dismiss pursuant to Federal Rule of Civil Procedure 12]."  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006) (quoting *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir.2004)); *see also Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010) ("A defendant normally . . . waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process.") (citing *Sanderford v. Prudential Ins. Co.*, 902 F.2d 897, 899 (11th Cir.1990)).  Therefore, the undersigned recommends that the Court exert personal jurisdiction over Defendants.

#### B.  Venue

Plaintiffs allege that venue is appropriate in the Middle District of Florida because a substantial portion of the events giving rise to their claims occurred in in this District.  Doc. 42 at 3.  This is corroborated by their allegations that they worked for Defendants in Brevard County, Florida. *Id.* at 3-6.  Pursuant to 28 U.S.C. § 1391(b)(2), a civil action can be brought in a "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of property that is the subject of the action is situated." It is evident that the events giving rise to this action occurred in one of the counties served by the Orlando Division of this Court. As such, the undersigned finds that venue is appropriate.

### C. Subject Matter Jurisdiction

Plaintiffs allege that there is federal question jurisdiction over their FLSA claims. Doc. 42 at 3. Federal question jurisdiction exists in civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331; U.*S. Bank Nat'l Ass'n v. Windsor*, 2016 WL 3166851, at *2 (M.D. Fla. Mar. 14, 2016), *report and recommendation adopted*, 2016 WL 3144143 (M.D. Fla. June 6, 2016). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiffs properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted); *see also Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997) ("A case does not arise under federal law unless a federal question is presented on the face of plaintiff's complaint."). Here, Plaintiffs bring claims arising under the FLSA, which is federal law, and thus the Court has federal question jurisdiction.

### D. Minimum Wage and Overtime Compensation

For Count I, Plaintiffs allege Defendants compensated Plaintiffs at an effective rate below the applicable minimum wage. Doc. 42 at 12-14. In Count II, Plaintiffs allege that Defendants violated FLSA's overtime wage provision by failing to compensate them for work Plaintiffs performed in excess of 40 hours a week. *Id*. at 15-17.

The FLSA establishes minimum and overtime wage standards for employees who are "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise

engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(b), 207(b). "To trigger liability under the FLSA's minimum [or overtime] wage provisions, . . . [P]laintiff must show: (1) an employee-employer relationship exists between [he and Defendants], and (2) he is 'covered' by the FLSA." *Cabreja v. SC Maint. Inc.*, 2019 WL 2931469, at *3 (M.D. Fla. June 19, 2019) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011), *report and recommendation adopted*, 2019 WL 2929325 (M.D. Fla. July 8, 2019). "To state a claim for failure to pay minimum [or overtime] wages under the FLSA, . . . [P]laintiff must demonstrate (1) he is employed by . . . [D]efendant[s], (2) . . . [D]efendant[s] engaged in interstate commerce, and (3) . . . [D]efendant[s] failed to pay him minimum. . . wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 F. App'x 940, 942 (11th Cir. 2012) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).

With respect to burden, a plaintiff must prove "with definite and certain evidence, that he performed work for which he was not properly compensated." *Sumner v. Garner*, 2019 WL 5188434, at *3 (M.D. Fla. June 26, 2019) (citing *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980)). A plaintiff may establish his or her damages by affidavit. *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" (citing *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979)). Additionally, "employees who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith." *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902 (11th Cir. 2012) (citing *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1566-67 (11th Cir. 1991)).

When an employer fails to appear and provide time records, and the employee proves he performed work for which he was not properly compensated, the burden shifts to the employer to prove its claim or disprove the employee's, and, upon failing to do so, the court can award damages to the employee even if the result is only approximate. *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)); *see also Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 828 (11th Cir. 1988).

As an initial matter, Plaintiffs demonstrate an employee-employer relationship between each of them and Defendants. "[T]he FLSA defines the terms 'employee' and 'employer' broadly." *Cabrera v. SC Maint. Inc.*, 2019 WL 2931469, at *3 (M.D. Fla. June 19, 2019), *report and recommendation adopted by*, 2019 WL 2929325 (M.D. Fla. July 8, 2019) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)). "An employee is 'any individual employed by an employer,' 29 U.S.C. § 203(e)(1), while an 'employer' includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee[.]'" (quoting 29 U.S.C. § 203(d)). "As defined, an employer is not only a company for whom the employee directly works but also includes 'any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment.'" *Id*. (quoting *Josendis*, 662 F.3d at 1298). "Under the FLSA, a plaintiff may sue an individual employer or multiple employers." *Partridge v. Mosley Motel of Saint Petersburg Inc.*, 2016 WL 70705, at *7 (M.D. Fla. Jan. 6, 2016) (citing *Kendrick v. Eagle Int'l Group, LLC*, 2010 WL 1257674, at *3 (S.D. Fla. May 26, 2010). "'The FLSA contemplates that there may be several simultaneous employers who are responsible for compliance with the FLSA.'" *Id.* (quoting *Kendrick*, 2010 WL 1257674, at *3). "However, an individual cannot be held personally liable

for violating the overtime provision of the FLSA unless he is an "employer" as that term is defined by the Act." *Id.* (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)).  The Act broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

Here, Plaintiffs allege that they were employed by Defendants and performed work from approximately September 13, 2023 to February 3, 2024 (as to Valdes) and approximately November 2021 to May 2024 (as to Butler).  Doc. 42 at 3-4.  Plaintiffs allege that Alonso owned Freeman's and Pinewood, exercised operational control over the business activities of Freeman's and Pinewood on a day-to-day basis, and exercised operational control over the employment of Plaintiffs.  Further, Plaintiffs allege that Alonso, through Pinewood, controlled and directed the payment of the Plaintiffs' wages throughout the Plaintiffs' employments, including decision-making regarding the payment of overtime premiums and any additions to or deductions from Plaintiffs' wages.  Plaintiffs also allege that Defendants collectively, were joint employers with respect to the Plaintiffs, as they, together, exerted sufficient control over the Plaintiffs' employment such that they shared or co-determined the matters governing the essential terms and conditions of the Plaintiffs' employment.

The undersigned recommends that Plaintiffs' allegations are sufficient to reflect that the relationship existed.  *See Elwell v. Pierce N Tell, LLC*, 2014 WL 12617813, at \*2 (M.D. Fla. Mar. 6, 2014) (citing *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (finding that allegations about a company's owner who engaged in the day-to-day operations of the business and had direct supervisory responsibility over plaintiff were sufficient to state a cause of action under the FLSA against an individual and company).

With respect to the coverage element, Plaintiffs allege that Defendants meet the requirements for enterprise coverage because, at the times relevant to this action, both Freeman's and Pinewood were enterprises engaged in interstate commerce, had gross annual revenue in excess of $500,000, and "had two or more employees handling, selling, or otherwise working on goods or materials which had travelled in interstate commerce." Doc. 42 at 4. Accepting these allegations as true, the undersigned recommends that Plaintiffs have sufficiently demonstrated coverage.[4]

Getting to the crux of the Amended Complaint and the Motion, Plaintiffs have proven that they performed work for which they were not properly compensated, and Defendants, by defaulting (and failing to respond to the Motion), have failed to disprove Plaintiffs' claims. As such, the Court may award damages to Plaintiffs for the work they performed during their employment with Defendants, even if those damages are approximate.

Further, under the FLSA, "an employer may deduct from an employee's pay the reasonable cost of employer provided housing ... , however, reasonable cost may not exceed the employer's actual cost, and does not include a profit to the employer." *Maldonado v. Alta Healthcare Grp.*, Inc., 17 F.Supp.3d 1181, 1191 (M.D. Fla. 2014) (citing *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993)); *see also* 29 C.F.R. §§ 531.3(a)-(b) (Under section 3(m) of the FLSA, "reasonable cost" is "not more than the actual cost to the employer of the board, lodging, or other facilities" and "[r]easonable cost does not include a profit to the employer or to any affiliated person."). "The employer is responsible for maintaining and preserving records

---

[4] The undersigned notes that in the original Answer, Freeman's and Alonso also admit to coverage. *Compare* Doc. 1 at 3, 6-7 *with* Doc. 9 at 2-3.

substantiating that cost." *Maldonado*, 17 F.Supp.3d at 1192 (citing 29 C.F.R. § 516.27(a)).  As

the *Maldanado* court explained:

> The plaintiff has the prima facie burden of showing "as a matter of just and
> reasonable inference that the wages paid to him did not satisfy the requirements of
> the FLSA." *Id*. (internal citations and quotations omitted). "Once the employee
> proves that the wages received were less than the statutory minimum, the burden
> shifts to the employer to prove with proper records the reasonable cost" of the items
> furnished. *Id*. at 1514. "An employer's unsubstantiated estimate of his cost, where
> the employer has failed to comply with the recordkeeping provisions of the FLSA,
> and where there has been no determination of reasonable cost by the Wage and
> Hour Division does not satisfy the employer's burden of proving reasonable cost."
> *Id*. (internal citations and quotations omitted).

17 F.Supp.3d at 1192 (citing *Caro–Galvan,* 993 F.2d at 1513).

Here, the well-pled factual allegations, which the undersigned accepts as true by virtue of

the default, establish that Plaintiffs did not receive a minimum wage for all hours worked, nor did

they receive the applicable overtime premium.  *See* Doc. 42 at 7-17.  Indeed, from the evidence

now before the Court, Cruz and Butler worked approximately 65 hours per week, but Cruz received

no more than $100 per week for all hours worked and Butler received between $200 and $400 per

week for all hours worked, depending on the applicable pay period.  *See* Docs. 95-1.  Thus, the

burden shifts to Defendants, who, by default, have admitted that "Defendants have failed to satisfy

the FLSA's recordkeeping requirements for employers who take the lodging credit under section

3(m) of the FLSA and are/were ineligible to take such lodging credits."  Doc. 42 at 10-11.  Due to

that, Defendants are not entitled to a deduction for lodging credits.  *See Donovan v. New Floridian

Hotel*, 676 F.2d 468, 475 (11th Cir. 1982) ("Since [defendants] failed to adduce evidence of

reasonable cost of providing board and lodging to employees, we conclude that the district court

correctly denied [defendants] credit for meals and lodging."); *Partridge*, 2016 WL 70705, at *11

("Because Defendants failed to meet the record keeping requirements of 29 C.F.R. § 516.27,

Defendants cannot use the cost of the furnished lodging to reduce or offset Partridge's minimum

wage or overtime recovery, if any."); *Chavez v. Arancedo*, 2018 WL 4610564, at *9 (S.D. Fla. Sept. 24, 2018) (finding that a defendant was not entitled to a lodging credit where the defendant failed to provide the necessary records to prove "reasonable costs" of lodging).

As an initial matter, the undersigned finds, in its discretion, that a hearing is not required to determine Plaintiffs' damages. A hearing is not required to determine a damages award if "sufficient evidence is submitted to support the request." *Feliciano v. Styrofoam Moulding Co.*, 2021 WL 3230683, at *5 (M.D. Fla. July 9, 2021) (citing cases including *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) and *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011)).  In the context of a default judgment, courts in this district have found that a plaintiff may establish the amount of their damages by affidavit, and that, in the absence of records, a plaintiff's approximation of hours is sufficient to establish damages. *See, e.g.*, *Feliciano*, 2021 WL 3230683, at *5 (finding the plaintiff's affidavit sufficient to establish damages in the context of a default judgment); *Miranda v. Palms Hotels & Villas, LLC*, 2007 WL 3232242, at *4 (M.D. Fla. Oct. 31, 2007) (in the context of a default judgment, finding that plaintiff's "affidavit is sufficient evidence to show the amount and extent of the work he performed, and provides an adequate basis for calculating his damages").  Here, Plaintiffs submitted a detailed declarations in support of the Motion explaining their hours worked, wages received, and period of unemployment.  Doc. 95-1.  As to Cruz, the record also includes his answers to the Court's interrogatories.  *See* Doc. 20.  The undersigned finds that Plaintiffs' sworn declarations are sufficient to establish damages, and the undersigned recommends that the Court find that these well-pled allegations and the documentary evidence demonstrates that Defendants failed to pay Plaintiffs minimum and overtime wages as required under the FLSA.

To calculate wages, Plaintiffs: (1) calculate their minimum wages; (2) calculate their overtime premium; (3) calculate their overtime wages; (4) add those amounts to determine their weekly wage; (5) subtract from that weekly wage their actual paid wages; and (6) determine their unpaid wages. *See* Doc. 95-1.

As to Cruz, those wage calculations are as follows:

- **September 13, 2021 - September 29, 2023 (2.43 weeks; 65 hours/week @ $15.00/hour):**
  - Minimum Wage: FL Minimum Wage Rate ($11.00/hour) * 40 hours/week= $440.00/week
  - Overtime Premium: Regular Rate ($15.00/hour) * 1.5 = $22.50/overtime hour
  - Overtime Compensation: $22.50/overtime hour * 25 overtime hours = $562.50/week
  - Minimum Wage ($440.00) + Overtime Compensation ($562.50) = $1,002.50/week
  - Weekly Unpaid Wages: $1,002.50/week – $100.00/week (actual pay) = $902.50/week
  - Unpaid Wage Damages for this period: $902.50/week * 2.43 weeks= **$2,193.08**

- **September 30, 2022 - February 3, 2024 (18 weeks; 65 hours/week @ $17.00/hour):**
  - Minimum Wage: FL Minimum Wage Rate ($12.00/hour) * 40 hours/week= $480.00/week
  - Overtime Premium: Regular Rate ($17.00/hour) * 1.5 = $25.50/overtime hour
  - Overtime Compensation: $25.50/overtime hour* 25 overtime hours= $637.50/week
  - Minimum Wage ($480.00) + Overtime Compensation ($637.50) = $1,117.50/week
  - Weekly Unpaid Wages: $1,117.50/week – $100.00/week (actual pay) = $1,017.50/week
  - Unpaid Wage Damages for this period: $1,017.50/week * 18 weeks = **$18,315.00**

*See* Docs. 95, 95-1; *see also* Doc. 20.  Accordingly, Cruz has established **$20,508.08** in unpaid wages.

As to Butler, those wage calculations are as follows:

- **November 11, 2021- September 29, 2022 (46 weeks; 65 hours/week@$14.00/hour):**
  - Minimum Wage: FL Minimum Wage Rate ($10.00/hour) * 40 hours/week= $400.00/week
  - Overtime Premium: Regular Rate ($14.00/hour) * 1.5 = $21.00/overtime hour
  - Overtime Compensation: $21.00/overtime hour* 25 overtime hours = $525.00/week
  - Minimum Wage ($400.00) + Overtime Compensation ($525.00) = $925.00/week
  - Weekly Unpaid Wages: $925.00/week – $200.00/week (actual pay) = $725.00/week
  - Unpaid Wage Damages for this period: $725.00/week * 46 weeks = **$33,350.00**

- **September 30, 2022 - December 31, 2022 (13.14 weeks; 65 hours/week @ $14.00/hour):**
  - Minimum Wage: FL Minimum Wage Rate ($11.00/hour) * 40 hours/week = $440.00/week
  - Overtime Premium: Regular Rate ($14.00/hour) * 1.5 = $21.00/overtime hour
  - Overtime Compensation: $21.00/overtime hour* 25 overtime hours= $525.00/week
  - Minimum Wage ($440.00) + Overtime Compensation ($525.00) = $965.00/week
  - Weekly Unpaid Wages: $925.00/week – $200.00/week (actual pay) = $765.00/week

- o Unpaid Wage Damages for this period: $765.00/week * 13.14 weeks = **$10,052.10**

- **January 1, 2023 - September 29, 2023 (38.7 weeks; 65 hours/week@ $15.00/hour):**
  - o Minimum Wage: FL Minimum Wage Rate ($11.00/hour) * 40 hours/week= $440.00/week
  - o Overtime Premium: Regular Rate ($15.00/hour) * 1.5 = $22.50/overtime hour
  - o Overtime Compensation: $22.50/overtime hour * 25 overtime hours = $562.50/week
  - o Minimum Wage ($440.00) + Overtime Compensation ($562.50) = $1,002.50/week
  - o Weekly Unpaid Wages: $1,002.50/week – $200.00/week (actual pay) = $802.50/week
  - o Unpaid Wage Damages for this period: $802.50/week * 38.7 weeks = **$31,056.75**

- **September 30, 2023 - December 31, 2023: (13.14 weeks; 65 hours/week@ $15.00/hour):**
  - o Minimum Wage: FL Minimum Wage Rate ($12.00/hour) * 40 hours/week= $480.00/week
  - o Overtime Premium: Regular Rate ($15.00/hour) * 1.5 = $22.50/overtime hour
  - o Overtime Compensation: $22.50/overtime hour * 25 overtime hours = $562.50/week
  - o Minimum Wage ($480.00) + Overtime Compensation ($562.50) = $1,042.50/week
  - o Weekly Unpaid Wages: $1,042.50/week – $200.00/week (actual pay) = $842.50/week
  - o Unpaid Wage Damages for this period: $842.50/week * 13.14 weeks = **$11,070.45**

- **January 1, 2024 - May 8, 2024 (18.28 weeks; 65 hours/week@ $16.00/hour):**
  - o Minimum Wage: FL Minimum Wage Rate ($12.00/hour) * 40 hours/week = $480.00/week
  - o Overtime Premium: Regular Rate ($16.00/hour) * 1.5 = $24.00/overtime hour
  - o Overtime Compensation: $24.00/overtime hour * 25 overtime hours = $600.00/week
  - o Minimum Wage ($480.00) + Overtime Compensation ($600.00) = $1,080.00/week
  - o Weekly Unpaid Wages: $1,080.00/week – $400.00/week (actual pay) = $680.00/week
  - o Unpaid Wage Damages for this period: $680.00/week * 18.28 weeks = **$12,430.40**

*See* Docs. 95, 95-1.  Accordingly, Butler has established **$97,959.70** in unpaid wages.

### E. Liquidated Damages

Having established violations of the minimum wage and overtime provisions of the FLSA, the undersigned turns to liquidated damages.  An employer who violates the minimum wage and overtime provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Indeed, "the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are mandatory absent a showing of good faith."  *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th

Cir. 1987) (citations omitted).  Here, Defendant has not shown good faith.  *See also* Doc. 42 at 14, 17 ("Defendants knew and/or showed reckless disregard for the provisions of the FLSA concerning the payment of minimum wages, as required by the Fair Labor Standards Act, and remain owing Plaintiffs these unpaid wages since the commencement of the Plaintiffs' respective employments with Defendants, as set forth above. As such, Plaintiffs are entitled to recover liquidated damages in an amount equal to their unpaid minimum wage damages.").  So, Plaintiffs are entitled to an award of damages, consisting of his unpaid minimum and overtime wages and an equal amount of liquidated damages:

- Cruz: **$41,016.16** ($20,508.08 in unpaid wages and $20,508.08 in liquidated damages); and

- Butler: **$195,919.40** ($97,959.70 in unpaid wages + $97,959.70 in liquidated damages).

*See* 29 U.S.C. § 216(b).

### F.  Attorney Fees and Costs

In the Amended Complaint, Plaintiffs make a claim for attorney fees and costs pursuant to § 216(b).  Doc. 42 at 17.  In the Motion, Plaintiffs request leave to file a motion quantifying the amount of attorney fees.  Doc. 95 at 14.  Because it is recommended that Plaintiffs are entitled to default judgment on their FLSA claims, the undersigned recommends that the Court find that Plaintiffs are entitled to their costs and reasonable attorney fees for time spent litigating this case.  *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  Thus, the undersigned recommends that the Court allow Plaintiffs to file a motion quantifying for attorney fees and costs pursuant to 29 U.S.C. § 216(b).  *See* Fed.R.Civ.P. 54(d)(2)(B); *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing

*Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (providing that when a party makes a claim for fees, it is the party's burden to establish entitlement and to document the appropriate hours and hourly rate.)).

### V.    Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that:

1.    Plaintiffs' Motion for Default Judgment (Doc. 95) be **GRANTED** to the extent that judgment against Defendants (with an entitlement to move for quantification of attorney fees and costs) as follows:

> a.  Judgment in favor of Cruz in the amount of **$41,016.16** ($20,508.08 in unpaid wages and $20,508.08 in liquidated damages); and
>
> b.  Judgment in favor of Butler in the amount of **$195,919.40** ($97,959.70 in unpaid wages + $97,959.70 in liquidated damages).

2.    If the report is adopted, the Court grant leave for Plaintiffs to file a motion for quantification of attorney fees and costs within a specified time period.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Recommended** in Orlando, Florida on January 5, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

- 16 -